IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHARLES KIRK DIGGS          :          CIVIL ACTION
                                          :
            v.                           :
                                          :
DAVID DIGUGLIELMO, et al         :          NO. 06-24

**<u>MEMORANDUM</u>**

**Padova, J.**                                                       **November     , 2007**

        Petitioner Charles Kirk Diggs has filed a counseled petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In a Report and Recommendation dated March 28, 2007, Magistrate Judge Scuderi recommended that Diggs's petition be denied and that no certificate of appealability be issued.  Presently before the Court are Diggs's counseled objections to the Report and Recommendation, as well as Diggs's *pro se* objections.  For the following reasons, the objections are overruled and the Report and Recommendation is adopted as the decision of the Court.

## I.     FACTS AND PROCEDURAL HISTORY

        On February 12, 1974, 18-year-old Linda DeBose was stabbed to death in the basement of her home on Medary Avenue in Philadelphia.[1]  Linda's mother, Alice DeBose, returned from work at approximately 11:20 p.m. on February 12 and found her daughter lying in a pool of blood.  Linda was rushed to Albert Einstein Medical Center where she later died.  In a dying declaration, Linda was able to identify her attackers by name to both her mother and to the police.  Trial testimony revealed that Linda was stabbed approximately 69 times in the throat, arms, and upper body, and then left to die.  Within three hours of the murder, Philadelphia police arrested Louis Riggins,

---

        [1]The factual recitation of Diggs's crimes is adopted from the Pennsylvania Superior Court's recitation in its opinion denying Diggs's direct appeal following his conviction. <u>Commonwealth v. Diggs</u>, No. 570 EDA 2002, at 2 (Pa. Super. April 19, 2005).

Diggs's co-conspirator.  Diggs was arrested in June 1974 in Chester, Pennsylvania, where he had

been hiding under several assumed names.  Diggs was released on bail and fled from authorities.

After alluding authorities for an additional two years, Diggs was arrested again in Philadelphia on

May 17, 1976.

On November 3, 1977, a jury sitting before the Honorable Edwin Malmed, Court of Common

Pleas of Philadelphia County, found Diggs guilty of first-degree murder, criminal conspiracy,

possession of an instrument of crime, and prohibited weapons.  This conviction was obtained

following Diggs's third trial.  The first trial ended when Diggs requested the opportunity to obtain

new counsel; his second ended in a mistrial when members of the jury were exposed to newspaper

coverage of the case.  Judge Malmed sentenced Diggs to life imprisonment, concurrent to any other

sentences he may be serving.  Diggs's co-conspirator, Louis Riggins, was convicted of first-degree

murder and criminal conspiracy in a separate trial, and sentenced to life imprisonment.  A third

defendant, Alfred Clark, was acquitted on all charges in a separate trial.

After pursuing his appellate rights under Pennsylvania law, Diggs filed a federal writ of

habeas corpus in 1990.  On March 27, 1991, the Honorable John P. Fullam granted federal habeas

corpus relief on the grounds that in Diggs's 1977 jury trial, the prosecution had systematically

excluded black venire persons by challenging them solely on the basis of race.  Diggs v. Vaughn,

Civ. A. No. 90-2083, 1991 WL 46319 (E.D. Pa. March 27, 1991).  The District Court ordered a new

trial pursuant to Batson v. Kentucky, 476 U.S. 79 (1986), a case decided while Diggs's appeal had

been pending in the state courts.

Diggs was retried before the Honorable Juanita Kidd Stout in October 1991.  On October 25,

1991, Diggs was again convicted by a jury of first-degree murder, criminal conspiracy, possession

of an instrument of crime, and prohibited weapons.   Judge Stout sentenced Diggs to life imprisonment for the murder conviction, consecutive to any other sentences he was then serving.

Diggs filed a direct appeal with the Pennsylvania Superior Court raising various claims.  The Superior Court affirmed the judgment of sentence in a memorandum opinion on August 15, 1996. Commonwealth v. Diggs, No. 3664 PHILA 1994, slip op. at 1-9 (Pa. Super. Aug. 15, 1996).  The Pennsylvania Supreme Court denied Diggs's petition for allowance of appeal, Commonwealth v. Diggs, 698 A.2d 592 (Pa. 1997) (table), and the United States Supreme Court denied his petition for writ of certiorari Diggs v. Pennsylvania, 522 U.S. 1124 (1998) (table).

On January 27, 1999, Diggs filed a *pro se* petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Con. Stat § 9541, et seq.  The PCRA court appointed counsel and two amended PCRA petitions were subsequently filed.  The PCRA court dismissed the petition without a hearing by order dated January 8, 2002.  Diggs filed a *pro se* notice of appeal on February 1, 2002. On February 6, 2002, pursuant to Pa. R. A. P. 1925(b), the PCRA court ordered Diggs to file a Concise Statement of Matters Complained of on Appeal.   On March 25, 2002, the PCRA court issued an opinion explaining its denial of Diggs's PCRA petition.   On October 10, 2003, the Superior Court affirmed the dismissal of the PCRA petition, finding that Diggs waived all but one of the issues raised in his petition due to his failure to properly file a statement of matters complained of on appeal in accordance with Pa. R. A. P. 1925(b).  Commonwealth v. Diggs, No. 570 EDA 2002 (Pa. Super. Oct. 10, 2003).  After the Superior Court denied Diggs's motion for reconsideration, he filed a petition for allowance of appeal in the Pennsylvania Supreme Court.  On September 16, 2004, the Pennsylvania Supreme Court remanded the case to the Superior Court and instructed the Superior Court to address the merits of the issues raised by Diggs in the 1925(b) statement that was docketed

-3-

on February 28, 2002.  <u>Commonwealth v. Diggs</u>, 858 A.2d 1160 (Pa. 2004).  The Superior Court affirmed the denial of PCRA relief in a memorandum opinion on April 19, 2005.  <u>Commonwealth v. Diggs</u>, 570 EDA 2002, at 24 (Pa. Super. April 19, 2005) (hereinafter the "PCRA Appeal Opinion").  The Pennsylvania Supreme Court denied Diggs's request for allowance of appeal following this decision by the Pennsylvania Superior Court.  <u>Commonwealth v. Diggs</u>, 890 A.2d 1056 (Pa. 2005) (table).

On January 4, 2006, Diggs filed the present counseled petition for writ of habeas corpus.  On October 6, 2006, Diggs filed an "Amended Petition for Habeas Corpus Relief Pursuant to 28 U.S.C. § 2254 et seq. and Amended Brief Submitted in Support of Habeas Corpus Petition Filed Pursuant to 28 U.S.C. § 2254 et seq."  He raises the following claims:[2]

1.    Denial of right to effective assistance of counsel when the state court failed to colloquy him about his wish to be represented by effective counsel on post-verdict motions and after the denial of his PCRA petition, and layered ineffectiveness of counsel in this regard;

2.    Trial court error in instructing the jury that impending death provides the assurance of truthfulness, and layered ineffectiveness of counsel for failing to raise and preserve this claim;

3.    Ineffectiveness of appellate counsel for failing to raise ineffectiveness of trial counsel for not objecting to the prosecutor's questioning of a prosecution witness regarding the witness's past criminal history;

---

[2]Magistrate Judge Scuderi identified these issues from the 139-page Amended Petition filed by the Petitioner.  Petitioner does not object to the Magistrate Judge's listing of his asserted claims.

4.      Trial court error in instructing the jury on accomplice liability, conspiracy, and specific intent, and ineffectiveness of appellate counsel for failing to raise ineffectiveness of trial counsel for not challenging these jury instructions;

5.      Violation of double jeopardy rights in having four trials for the same offense;

6.      Ineffectiveness of trial counsel for failing to present Petitioner's alibi defense, and ineffectiveness of appellate counsel for failing to preserve the claim on appeal;

7.      Trial court error in failing to provide Petitioner with the trial transcripts from voir dire;

8.      Prosecutorial misconduct in improperly excluding black venirepersons in violation of Batson;

9.      Violation of due process by excluding evidence of the acquittal of Petitioner's co-defendant, Alfred Clark, and layered ineffectiveness of counsel for failing to raise and preserve this claim;

10.     Violation of due process for having to wear prison clothes at trial;

11.     Trial court error in increasing Petitioner's sentence after trial, and layered ineffectiveness of counsel for failing to raise and preserve this claim;

12.     Trial court error for failing to grant an evidentiary hearing on affidavits submitted by witnesses attacking the credibility of Ricardo Kelsey; and

13.     Prosecutorial misconduct in closing argument.

On March 28, 2007, Magistrate Judge Scuderi submitted a Report and Recommendation that the petition be denied.  (Docket Entry # 18.)  On April 11, 2007, Diggs filed *pro se* Objections to the

Magistrate Judge's Report and Recommendation (Docket No. 19) ("the *pro se* Objections"), and *pro se* "Supplemental Objections Motion for a Evidentiary Hearing Petitioner's Motion for a Copy of the Record Relevant to the Issues Before this Court" (Docket No. 20).  On May 19, 2007, Diggs filed a counseled "Petitioner's Objections to Magistrates Report and Recommendation" ("the counseled Objections").  (Docket No. 23).  Respondents filed a Response to the objections on May 25, 2007.  (Docket No. 24).  Finally, Diggs filed a *pro se* Reply to the Response. (Docket No. 27).

## II.   STANDARDS

### A.   <u>Exhaustion and Procedural Default</u>

A prerequisite to the issuance of a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment is that the petitioner must have "exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A); <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999).  Exhaustion requires that a petitioner "give state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  <u>Id.</u> at 845.  To satisfy the requirements of exhaustion, petitioners must "fairly present" their claims to the state courts, which means that petitioners must present the factual and legal substance of a particular claim to the state courts in a manner that puts them on notice that a federal claim is being asserted.  <u>McCandless v. Vaughn</u>, 172 F.3d 255, 261 (3d Cir. 1999) (citing <u>Anderson v. Harless</u>, 459 U.S. 4, 6 (1982) and <u>Picard v. Connor</u>, 404 U.S. 270, 277-78 (1971)).   The exhaustion requirement may be excused if requiring exhaustion would be futile.  <u>Werts v. Vaughn</u>, 228 F.3d 178, 192 (3d Cir. 2000) (citing cases); <u>see</u> <u>also</u> <u>McCandless</u>, 172 F.3d at 260 ("When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in the state courts, the exhaustion

-6-

requirement is satisfied because there is 'an absence of available State corrective process.'" (quoting 28 U.S.C. § 2254(b))). However, in such a situation, a petitioner is considered to have procedurally defaulted the claim. Id.

The procedural default doctrine prohibits federal courts from reviewing a state court decision involving a federal question if the state court decision is based on a rule of state law that is independent of the federal question and adequate to support the judgment. Bronshtein v. Horn, 404 F.3d 700, 707 (3d Cir. 2005). A state rule is "independent and adequate" if "(1) the rule speaks in unmistakable terms; (2) all state appellate courts refused to review the petitioner's claim on the merits; and (3) their refusal was consistent with other decisions." Nara v. Frank, 488 F.3d 187 (3d Cir. 2007) (citing cases). State procedural rules have been found to be inadequate if "they are not firmly established and regularly followed or if they are novel or unforeseeable." Bronshstein, 404 F.3d at 707 (internal citation and quotations omitted). This ensures that a petitioner has fair notice of the need to follow a state procedural rule. Id. The Commonwealth bears the burden of demonstrating that a state procedural rule is adequate to preclude federal habeas review. See Lark v. Beard, Civ. A. No. 01-1252, 2006 WL 1489977, *11 (E.D. Pa. May 23, 2006) (citing cases). Whether a state rule is firmly established and regularly applied is determined as of the date the default occurred and not as of the date the state court relied on it. Doctor v. Walters, 96 F.3d 675, 683-84 (3d Cir. 1996).

A procedural default may be excused and federal courts may consider the merits of a procedurally defaulted claim if the petitioner establishes "cause and prejudice" or a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). To establish cause, the petitioner must "show that some objective factor external to the defense impeded counsel's efforts

to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). Ineffective assistance of counsel can constitute cause; however, the ineffective assistance of counsel claim must have been presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. Id. at 488-89; Edward v. Carpenter, 529 U.S. 446, 451 (2000). To establish prejudice, a petitioner must prove "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to [the petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Werts, 228 F.3d at 193 (quoting Murray, 477 U.S. at 494). This standard requires the petitioner to show that he was denied "fundamental fairness" at trial. Id. at 193. Prejudice occurs in the context of a claim for ineffective assistance of counsel where "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different." Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996). Alternatively, the court may consider a procedurally defaulted claim if the petitioner can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 748. The "fundamental miscarriage of justice" exception is applicable only in extraordinary cases, such as "'where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Werts, 228 F.3d at 193 (quoting Murray, 477 U.S. at 496). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998). To establish such a claim, a petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 321-22 (1995). Further, actual innocence "does not merely require a showing that a reasonable doubt exists in the light of the new

evidence, but rather that no reasonable juror would have found the defendant guilty." Id. at 329.

B.      Standard of Review for Claims Addressed on the Merits

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), which became effective on April 24, 1996, amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254. Werts, 228 F.3d at 195. AEDPA increases the deference federal courts must give to the factual findings and legal determinations of the state courts. Id. at 196 (citing Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)). Pursuant to 28 U.S.C. § 2254(d), as amended by AEDPA, a petition for habeas corpus may be granted only if (1) the state court's adjudication of the claim resulted in a decision contrary to, or involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the adjudication resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. Werts, 228 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)).

The Supreme Court has further explained that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Additionally, "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's

-9-

case." Id. at 413.  The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409.  "[A]n unreasonable application of federal law is different from an incorrect application of such law and a federal habeas court may not grant relief unless that court determines that a state court's incorrect or erroneous application of clearly established federal law was also unreasonable." Werts, 228 F.3d at 196 (citing Williams, 529 U.S. at 411).

      C.     Ineffective Assistance of Counsel

The Supreme Court set forth the standard for ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  First a petitioner must show that counsel's performance fell below an objective standard of reasonableness, and second, a petitioner must show that he or she was actually prejudiced by counsel's deficient performance.   Id. at 687-88.   In determining reasonableness, because "it is too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," a court must be "highly deferential" to counsel's performance and "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." Id. at 689.   In determining prejudice, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.  With respect to claims of ineffective assistance of counsel for failing to raise or preserve claims, there can be no ineffective assistance of counsel based on an attorney's failure to raise a meritless claim.  United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999).

## III.   DISCUSSION

The Magistrate Judge recommends finding that Diggs's claims have been procedurally

defaulted or should be denied because they lack merit.  The claims, and their corresponding objections are addressed in turn.

      A.      <u>Denial of Right to Effective Assistance of Counsel When the State Court Failed to Colloquy Petitioner About His Wish to be Represented by Counsel, and Layered Ineffectiveness of Counsel in this Regard</u>

In his federal habeas petition, Diggs first contends that the state courts violated his due process and equal protection rights by failing to colloquy him about his wish to be represented by counsel on post-verdict motions and after the denial of his PCRA petition, thereby denying his right to effective assistance of counsel.  Diggs also raises a layered claim of ineffective assistance of counsel for failing to raise and preserve the underlying denial-of-counsel claim.

The Pennsylvania Superior Court addressed these two claims on PCRA review and found that (1) Diggs waived his claim of trial court error for failing to make an on-the-record determination of the voluntariness of his waiver of counsel at the post-trial motions hearing because he could have raised the issue on direct appeal but failed to do so; and (2) his claim of ineffective assistance of counsel for failing to raise the issue on appeal was without merit because Diggs could not demonstrate that he suffered actual prejudice as a result of the Judge Stout's failure to conduct a colloquy.  PCRA Appeal Opinion at 5-7.

The Magistrate Judge recommends finding that the claim of trial court error is procedurally defaulted by operation of the independent and adequate state ground doctrine.  The independent and adequate state law doctrine applies because requirements that claims of trial error be raised on direct appeal is "firmly established and regularly followed."  <u>See</u> <u>Riley v. Lavan</u>, Civ. A. No. 04-2577, 2005 WL 1995462 (E.D. Pa. Aug. 16, 2005).  The Magistrate Judge also recommends finding that

Diggs has not established cause or actual prejudice, nor made a showing of actual innocence in order to excuse his procedural default.  According to the Magistrate Judge, and as discussed infra, Diggs's claim of ineffective assistance of counsel does not excuse his default because the ineffective assistance of counsel claim is without merit.  The Magistrate also notes that any claim relating to ineffective assistance of counsel during the PCRA phase of his appeals, is without merit as there is no federal constitutional right to the assistance of counsel on collateral appeal.  See 28 U.S.C. § 2254(i).  Having reviewed Diggs's objections, we find them to be meritless.

       1.     Failure to conduct a colloquy

Diggs argues in his *pro se* objections that the Magistrate Judge is blaming him for the trial court's failure to conduct a colloquy, that the failure to conduct a colloquy caused him prejudice, and that the failure to conduct a colloquy has resulted in new trials in other cases.  (*Pro se* Objections at 3-4.)  In his counseled objections, Diggs raises two arguments asserting that his claim of trial court error for failing to conduct a colloquy is not procedurally defaulted as recommended by the Magistrate Judge.  First, counsel asserts that the Magistrate Judge found this claim to be procedurally defaulted because Diggs failed to include it on his 1925(b) statement, and that the procedural rule regarding 1925(b) statements was not an independent and adequate state ground because it was not firmly established at the time he filed his appeal.  Second, counsel argues that Diggs nevertheless did raise this claim in his appellate briefs.  (Counseled Objections at 9-28.)

Contrary to Petitioner's assertion, nothing in the Magistrate Judge's Report and Recommendation can be read to imply that Petitioner is faulted for the failure to conduct the colloquy.  Contrary to counsel's assertion, the Magistrate Judge did not rely on a failure by Diggs to include this issue on a 1925(b) statement.  Rather, the Magistrate Judge relied on the fact that the

Superior Court, on collateral review, found that this issue had been waived because Diggs "could have raised the issue on direct appeal but failed to do so." PCRA Appeal Opinion at 5. In fact, the Magistrate Judge specifically noted that the Superior Court did not find this issue waived because Diggs omitted the issue from a *pro se* statement of matters complained of on appeal. Because the Magistrate Judge did not base his recommendation on the Rule 1925(b) issue, this objection is overruled.

As for counsel's argument that Diggs did raise this issue in his direct appeal, he does not point to any place in the record where this underlying claim was raised in the direct appellate briefs. Rather, he only makes a bald assertion that this claim was raised previously. Having requested and received from the District Attorney a copy of Diggs's direct appellate briefs, both counseled and pro se, we find that there is no reference to a claim of trial court error for failing to conduct an on-the-record colloquy regarding Diggs's desire to proceed without counsel in either appellate brief. Consequently, this objection is overruled and we adopt the Magistrate's recommendation that this claim is procedurally defaulted.

With respect to Diggs's claim that there is "cause and prejudice" to excuse his procedural default because appellate counsel was ineffective by failing to raise and preserve this issue, as discussed, infra, Diggs's ineffective assistance of counsel claim has no merit. Therefore, his claim of ineffective assistance of counsel cannot excuse his procedural default.

Finally, Diggs asserts that he has made a showing of actual innocence because he has steadfastly maintained that he was not involved in this crime and had no knowledge of its existence, and because he asserted an alibi in all prior proceedings. Diggs has not come forward with any new reliable evidence that was not presented at trial. Therefore, we find that Diggs has failed to make

-13-

a showing of actual innocence and that the fundamental miscarriage of justice cannot excuse his procedural default of this claim.

> 2. Ineffective Assistance of Counsel for Failing to Raise or Preserve Claim for Failing to Conduct a Colloquy

Diggs's layered claim of ineffective assistance of counsel for failing to raise and preserve this claim of trial court error is governed by applying the AEDPA review standard to the controlling Supreme Court law on ineffective assistance, Strickland v. Washington, 466 U.S. 668 (1984).

The Pennsylvania Superior Court denied this ineffectiveness of counsel claim on the grounds that Diggs failed to show how he was prejudiced by appellate counsel's failure to raise and preserve the claim on direct appeal.  PCRA Appeal Opinion at 5-7.  The Magistrate Judge similarly found that Diggs was not prejudiced by appellate counsel's failure to raise and preserve this claim because: (1) at his post-verdict motion hearing, Judge Stout appointed an attorney, but Diggs stated he was unhappy with the appointment and proceeded to represent himself; (2) Diggs did not argue or suggest during the hearing that he wished to be represented by counsel, nor is there any indication that he wished to raise additional claims; and (3) though Diggs argues that the absence of a colloquy about the potential risks of proceeding *pro se* cost him "important rights and advantages," Diggs does not explain what these rights and advantages may have been, he does not explain what Judge Stout should have told him that he did not already know, and he presents no evidence indicating that he would have declined to proceed *pro se* if the court had given the colloquy.  (Report and Recommendation 18-19.)

We agree that the Superior Court's prejudice determination was not contrary to nor an unreasonable application of Strickland.  In his *pro se* Objections, Diggs re-asserts that he was

-14-

prejudice by the Judge Stout's failure to conduct a colloquy regarding his waiver of counsel because he "was in no position to know what rights or issues he [was] abandoning."  In his counseled Objections, Diggs asserts that he would not have proceeded without counsel had he been properly advised, and he would not have waived raising the issue regarding the dying declaration instruction, discussed infra, if he had realized its legal viability.  Additionally, counsel asserts that post-trial counsel would have raised additional issues at the post-trial motions hearing.

Diggs's objections on this claim are overruled.  The only issue identified by Diggs that he claims would not have been waived had he been properly advised regarding the risks of proceeding without counsel is the claim of error in the jury instructions on dying declarations.  However, the Superior Court in its memorandum addressing Diggs's direct appeal only noted that the following two claims were waived because he had failed to raise them in his post-trial motions: (1) a claim for ineffective assistance of counsel for failing to request a cautionary instruction with respect to the introduction of other crimes evidence, and (2) ineffective assistance of counsel for failing to use a statement to impeach Commonwealth witness Ricardo Kelsey.  Nevertheless, the Superior Court addressed these two issues on the merits and found them to be meritless.  See Commonwealth v. Diggs, No. 3664 Philadelphia 1994, at 8-9.  Thus, Diggs was not prejudiced by his failure to raise any issue during his post-trial hearing.  Diggs's claim that he was prejudiced because he would not have waived his claim regarding the jury instruction concerning the dying declaration  is unavailing because no court found that this claim was waived as a result of his failure to raise it *at the post-trial hearing*.  Rather, the Superior Court, in its opinion affirming the PCRA court's denial of Diggs's PCRA petition, found this claim to be waived because Diggs failed to raise the issue *on direct appeal*.  See PCRA Appeal Opinion at 15.  Consequently, Diggs has not demonstrated any prejudice

by his appellate counsel's failure to raise and preserve this issue. Because this claim for ineffective assistance of counsel is without merit, it cannot excuse Diggs's procedural default of his claim of trial court error in failing to conduct a colloquy.

      B.    <u>Trial Court Error in Instructing the Jury that Impending Death Provides the Assurance of Truthfulness, and Layered Ineffectiveness of Counsel for Failing to Raise and Preserve This Claim</u>

Diggs's next claim pertains the Judge Stout's instructions to the jury regarding dying declarations. Diggs assert that the trial court violated his constitutional rights by erroneously instructing the jury that impending death provides the assurance of truthfulness, and that trial counsel and appellate counsel were ineffective for failing to preserve the claim on appeal.

The Superior Court addressed these claims in the PCRA Appeal Opinion. The Superior Court found that the claim of trial court error in the jury instructions regarding dying declarations was waived because Diggs failed to raise this claim on direct appeal. The Superior Court also found that the ineffective assistance of counsel claim was waived because Diggs failed to raise this issue in his 1925(b) statement. <u>Id.</u>

Because of the state court finding of waiver, the Magistrate Judge found that the claim of trial court error was procedurally defaulted, and that the alleged ineffectiveness of counsel claim cannot constitute "cause" for the default because Diggs failed to properly present the claim to the state court independently and prior to its use to establish cause. (Report and Recommendation at 20-21.) The Magistrate Judge also noted that if he were to reach the merits of this claim, he would find it to be meritless because Judge Stout's instructions property set forth the Pennsylvania law on dying declarations. (<u>Id.</u> at 21 n.11.) Therefore, the Magistrate Judge noted that there was no constitutional

violation on the basis of erroneous jury instructions and no ineffective assistance of counsel for failing to preserve this claim.

Diggs objects that waiver of a claim due to failure to include it in a 1925(b) statement is not an independent and adequate state ground upon which we can find a claim to be procedurally defaulted because this procedural rule was not firmly established at the time of his appeal. (Counseled Objections at 35.)  This objection is overruled.  First, the Superior Court only found that the layered claim of ineffective assistance of counsel for failing to raise the issue of an error in the jury instruction was waived for failing to include it in the 1925(b).  The Superior Court found that the underlying claim was waived because it could have been raised on direct appeal, but was not. Thus, Diggs's objection only applies to the Magistrate Judge's recommendation regarding the ineffective assistance of counsel, and not the underlying claim of error in the jury instructions. Second, the rule that an issue is waived if it is not raised in the 1925(b) statement was definitively established at least as early as October 1998.  See Commonwealth v. Lord, 719 A.2d 306, 308 (Pa. 1998); see also Commonwealth v. Butler, 812 A.2d 631, 633 (Pa. 2002) (holding that Lord "eliminated any aspect of discretion and established a bright-line rule for waiver under Rule 1925"). Diggs's procedural default for failing to include this claim of ineffective assistance of counsel occurred in early 2002, following the February 6, 2002 order by the PCRA court directing Diggs to file a concise statement of matters complained of on appeal.  Therefore, the procedural rule relied upon by the state in finding that Diggs had waived this claim was firmly established at the time of Diggs's default and Diggs objection is overruled.

C.     Ineffectiveness of Appellate Counsel for Failing to Raise Ineffectiveness of Trial
       Counsel for Not Objecting to Prosecutor's Questioning of a Prosecution Witness
       Regarding the Witness's Past Criminal History

Diggs asserts in his habeas petition that appellate counsel was ineffective for failing to raise the ineffectiveness of trial counsel for failing to object to prosecutor's questioning of Ricardo Kelsey, Detective Thompson, and Detective Devlin.   According to Diggs, Kelsey, a witness for the prosecution, testified that he entered into a plea agreement in which he agreed to plead guilty to the murders of Leroy Jackson, Jr. and Denise Walters, and to testify that Diggs confessed to murdering his victim, in exchange for a recommendation of a lesser sentence.  Additionally, the prosecution read into evidence testimony from Detective Thompson in which he testified that he knew Diggs, prior to the instant murder, in his capacity as a homicide detective.  The prosecutor also questioned Devlin about his knowledge of the double murders.  Diggs asserts that the combined testimony of Kelsey, Devlin, and Thompson implicated him in the double-murder for which Kelsey pled guilty, and that counsel failed to object, seek a curative instruction, or request a mistrial.

The Superior Court addressed on the PCRA appeal the merits of Diggs's claim that appellate counsel was ineffective for failing to raise on direct appeal the issue of whether trial counsel was ineffective for failing to object to the prosecutor's questioning of Ricardo Kelsey regarding his negotiated plea to unrelated murder charges.  See PCRA Appeal Opinion at 8-10.  The Superior Court found Diggs's claim regarding the questioning of Kelsey to be without merit because Kelsey never testified that Diggs participated in the murders of Mr. Jackson and Ms. Walters, and there was no indication that Kelsey's testimony created such an inference.  The Superior Court found that it was proper for the prosecutor to question  Kelsey on this matter, as this questioning was in

-18-

anticipation of an attack on Kelsey's credibility by the defense.  The Superior Court, therefore, concluded that trial counsel was not ineffective for failing to object, and appellate counsel was not ineffective in failing to raise the issue on direct appeal.

Also on the PCRA appeal, the Superior Court addressed in a footnote Diggs's claim regarding the questioning of Detective Devlin.  The Superior Court stated that "[Diggs] also argues that the Commonwealth should not have questioned Detective Martin Devlin about whether he was aware of any of the facts surrounding the Jackson/Walters murders before he spoke to Mr. Kelsey, and that prior counsel was ineffective with regard thereto."  The Superior Court found that this issue was waived because it was not listed in Diggs's court-ordered 1925(b) statement.  Alternatively, the Superior Court found that Diggs's claim of ineffective assistance of counsel was meritless because trial counsel did in fact object to the Commonwealth's questioning of Detective Devlin.  PCRA Appeal Opinion at 10 n.14.[3]

The Magistrate Judge recommends that the Superior Court's reasoning with respect to the claim regarding testimony by Kelsey was not contrary to or an unreasonable application of, the

---

[3]In the PCRA appeal, the Superior Court did not address the layered claim pertaining to whether appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to object to testimony from Detective Thompson regarding his prior familiarity with Diggs in his capacity as a homicide detective.  A review of the briefs filed by Diggs reveals that, while he raised the claim involving Kelsey and Devlin, he never raised an issue involving the testimony of Thompson in the PCRA appeal.  See Appellant's Brief for the Superior Court filed Nov. 1, 2004; Appellant's Brief for the Superior Court dated December 1, 2004.

This claim was, however, actually raised by Diggs's appellate counsel on direct appeal. (See Docket No. 31, "Brief for Appellant appealing the judgment of sentence imposed by the court of Common Pleas of Philadelphia County on September 7, 1994, at Nos. 2079-2081, July Term, 1974" at 12, 37-40.)  The Superior Court addressed the claim and found it to be meritless.

Diggs's failure to raise appellate counsel's ineffectiveness vis-a-vis Thompson in the PCRA appeal renders the issue procedurally defaulted.  As appellate counsel cannot have been ineffective for failing to raise an issue that he in fact did raise, the issue also is meritless.

standard set forth by the Supreme Court in <u>Strickland</u> because it is proper and commonplace for prosecutors to elicit damaging information on direct examination, rather than allow defense counsel to undermine the credibility of a prosecution witness. He concludes that, as trial counsel could not be faulted for failing to object to a proper line of questioning, appellate counsel was not constitutionally ineffective for failing to raise this claim on appeal.

Diggs objects to this portion of the Report and Recommendation by asserting that, a careful reading of Kelsey's testimony, focusing on how the prosecutor switched back and forth between questions about the double murders and the murder in this case, established that a reasonable jury would infer that Diggs was involved in the double murder. (*Pro Se* Objections at 8-9.) Our own careful review of Kelsey's testimony demonstrates that the reasoning of the state court is not contrary to nor an unreasonable application of the standard set forth in <u>Strickland</u>. Kelsey never testified that Diggs was involved in the double murders of Jackson and Walters, and, contrary to Diggs's assertion, there is simply no indication that Kelsey's testimony created such an inference. The prosecutor, after establishing that Kelsey committed the double murder, and that he admitted that crime to the officers when they asked him about Diggs, focused solely thereafter on Kelsey's knowledge of Diggs's involvement in the murder of Linda DeBose. (N.T. 10/22/91 at 195:4 - 207:5.) Accordingly, we overrule the objection as regards Kelsey's testimony.

Diggs also objects to the Magistrate Judge's Report on the grounds that his claim with regard to Detective Devlin was not addressed. The claim relating to Devlin's testimony was found to be waived by the Superior Court because it was not listed in Diggs's 1925(b) statement. This failure constitutes an independent and adequate state ground upon which to find this claim procedurally defaulted. However, the Superior Court, in the alternative, found that this claim lacked merit

because trial counsel did in fact object to the Commonwealth's questioning of Devlin.  Applying the deferential AEDPA standard, we find that the state court's adjudication of this claim was not contrary to or unreasonable application of the <u>Strickland</u> standard for ineffective assistance of counsel.   Accordingly, we overrule Diggs's objections regarding the Devlin testimony.

      D.    <u>Trial Court Error in Instructing the Jury on Accomplice Liability, Conspiracy and Specific Intent, and Ineffectiveness of Appellate Counsel for Failing to Raise Ineffectiveness of Trial Counsel in This Regard</u>

Diggs asserts in his petition that the trial court erred in instructing the jury on accomplice liability, conspiracy, and specific intent, and that appellate counsel was ineffective for failing to raise a claim of ineffectiveness of trial counsel for not challenging these jury instructions.  Diggs specifically contends that the trial court's charge did not adequately inform the jury that an accomplice must share the specific intent to kill with the active partner in order to be convicted of first degree murder, and the court improperly instructed the jury regarding specific intent.

The Superior Court addressed this claim on collateral appeal.  <u>See</u> PCRA Appeal Opinion at 10.  It found that the underlying claim was waived because it could have been raised on direct appeal, but was not.  The Superior Court also found that the layered ineffectiveness claim failed because the underlying claim was meritless as the jury charge, when reviewed as a whole clearly, adequately, and accurately reflected the law.

With respect to the claim pertaining to accomplice liability, the Superior Court found that the jury instructions adequately informed the jury that an accomplice must share the specific intent to kill with the active partner in order to be convicted of first degree murder.  The Superior Court pointed to the following portion of the jury instruction: "To aid and abet in the commission of a

crime, one must possess a shared intent to commit it." Id. at 11.  The Superior Court also noted that in response to the jury's request for clarification, the trial court stated, among other things, that "[a] person is really accountable for the conduct of another person when he is an accomplice of such other person in the commission of the offense.  To aid and abet in the commission of a crime, one must possess a shared intent to commit it.  One is an aider and abettor in the commission of a crime, that is he had joined in the commission, if he was an active partner in the intent which was the crime's basic element." Id. at 11-12.

With respect to the jury instructions pertaining to first degree murder, the Superior Court noted that the trial judge at first incorrectly stated that "[a] criminal homicide constitutes murder of the first degree when it is committed by an <u>unintentional</u> killing."  As noted by the Superior Court, the trial judge continued by stating that, "As used in this statute, intentional killing means, among other things, any willful, deliberate and premeditated killing."  The trial judge further instructed: "In determining whether or not the defendant committed the kind of intentional killing required for first degree murder, you should consider the testimony of . . . .  If the defendant intentionally used a deadly weapon on a vital part of the victim's body, you may infer from that the killing was intentional."  In response to a request for clarification, the trial court stated, among other things, the following regarding first degree murder:  "Now a definition of murder in the first degree.  A criminal homicide constitutes murder in the first degree when it is committed by an intentional killing. . . ."  The Superior Court held that while the trial court erred in initially stating that murder in the first degree is an unintentional killing, it concluded that this error was harmless because the trial judge on numerous subsequent occasions informed the jury that first degree murder required an intentional killing.  Id. at 14 n. 15.  The Superior Court concluded that the jury instruction, in total, was not

confusing and adequately informed the jury that an accomplice must also share the specific intent to kill with the active partner to be convicted of first-degree murder.

With respect to the jury instruction pertaining to conspiracy, the Superior Court noted that the trial judge stated:

> Where two or more join in the commission of an unjustified assault which results fatally, all are guilty, regardless of which one inflicts the mortal wound.
>
> Where two or more combine to make an assault, and in carrying out such common purpose another is killed, the one who enters into the combination but does not personally commit the wrongful act is equally responsible for the homicide as the one who directly causes it.
>
> Conspiracy is not synonymous with aiding and abetting.  Conspiracy requires an agreement to commit a crime, plus an overt act.

Id. at 14.  The Superior Court found that the trial court's instructions with respect to the crime of conspiracy were proper under state law.

The Magistrate Judge recommends finding that the jury charge with respect to accomplice liability, conspiracy, and first degree murder were entirely appropriate under state law, and the claim for ineffective assistance of appellate counsel for failing to raise trial court error is thus without merit.  The Magistrate rejected Diggs's challenge to the charge on accomplice liability, based on Everett v. Beard, 290 F.3d 500 (3d Cir. 2002), in which the United States Court of Appeals for the Third Circuit found an accomplice liability jury instruction to be flawed where Everett was the getaway driver in the robbery of a grocery store in which the robbers murdered two people during the robbery.  Diggs reasserts his argument as an objection to the Report and Recommendation.

We find that the trial judge's instructions regarding the need of the accomplice to share the specific intent were conclusively determined by the Superior Court to be appropriate under state law,

vitiating any federal constitutional claim of ineffective assistance in the failure of counsel to object thereto, and accordingly, overrule Diggs's objection. The Superior Court also rejected as a matter of state law Diggs's argument that the conspiracy instructions were flawed because a jury could have convicted him of conspiracy on the theory that the only crime he agreed to commit was "a simple assault on the victim", and believed that this was sufficient to find him guilty of first-degree murder. Finally, the Superior Court determined that the trial judge's mistaken utterance of "unintentional," rather than "intentional," when initially giving the first-degree murder instruction was adequately corrected by her in subsequent instructions and when the jury asked for clarification on the issue.

In assessing the merits of this claim, the Superior Court did not apply a rule of law that contradicted or unreasonably applied the applicable Supreme Court precedent on the review of jury instructions. See Estelle v. McGuire 502 U.S. 62, 72 (1991) (holding that jury instructions must be read as a whole and in context; an erroneous jury instruction can rise to the level of a constitutional violation only if it "so infected the entire trial that the resulting conviction violates due process"). Rather the Superior Court looked at the jury instructions as a whole and determined that they clearly and accurately indicated to the jury that, to find Diggs guilty of murder in the first degree, it was necessary that they find he possessed the requisite specific intent to kill.[4] The Superior Court also reviewed the jury instructions regarding conspiracy as a whole and concluded that the challenged portions of the jury instructions accurately conveyed the state law elements of conspiracy because the jury was informed that, to convict a defendant of conspiracy, a trier of fact must find that: (1) the

---

[4]Diggs's reliance on Everett v. Beard, 290 F.3d 500 (3d Cir. 2002) is misplaced. In Everett, the state court had explicitly permitted the jury to impute to the defendant the murderer's intent to kill. In the instant case, the trial judge informed the jury that "to aid and abet in the commission of a crime, one must possess a shared intent to commit it."

defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime. Commonwealth v. Murphy, 844 A.2d 1228, 1238 (Pa. 2004). Consequently, as the underlying claim of jury instruction error is without merit, Diggs's layered claim for ineffective assistance of appellate counsel in failing to raise this claim is also without merit.

   E.  Double Jeopardy

   Diggs asserts in his federal habeas petition that his double jeopardy rights were violated because he was tried four times for the same offense and specifically because his fourth trial occurred as a result of a federal court finding that the prosecutor's peremptory challenges in the third trial violated Batson v. Kentucky. On his direct appeal, the Superior Court noted that Diggs's double jeopardy claim was made pursuant to the Pennsylvania Constitution, and that he principally relied on Commonwealth v. Smith, 615 A.2d 321 (Pa. 1992). The Superior Court denied this claim. To the extent that Diggs asserts in his federal petition a claim that his double jeopardy rights pursuant to the Pennsylvania Constitution were violated, federal habeas relief is unavailable because federal habeas relief only concerns custody of individuals held in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). In order for Diggs's federal claim that his fourth trial violated the Double Jeopardy Clause of the federal constitution to be properly before us on federal habeas review, he must have exhausted this federal law claim in state court. Exhaustion requires that Diggs "fairly presented" the federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted. McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999). However, we need not determine whether Diggs

exhausted this federal claim in the state courts because we may deny a claim on the merits, notwithstanding the failure of the petitioner to exhaust his state court remedies.  28 U.S.C. § 2254(b)(2).

Diggs's claim that his protections afforded by the Double Jeopardy Clause were violated by his fourth trial are without merit.  The application of the double jeopardy bar requires a showing of the prosecutor's subjective intent to cause a mistrial in order to retry the case.  See United States v. Williams, 472 F.3d 81, 85 (3d Cir. 2007); see also United States v. Coleman, 862 F.2d 455, 458 (3d Cir. 1988) (noting that the Double Jeopardy Clause will not bar retrial absent intent on the part of the prosecutor to subvert the clause's protections); United States v. Gilmore, 454 F.3d 725, 729-30 (7th Cir. 2006) ("The key question is whether the prosecutor deliberately introduced the error in order to provoke the defendant into moving for a mistrial, and thereby rescuing a trial going badly. . . . Intent is a critical element to understand when determining if a prosecutor's actions intentionally triggered the mistrial.")  There is no evidence that the prosecutor in Diggs's third trial – his first trial to result in a verdict – deliberately intended to cause a mistrial when he violated Batson.  Rather, it is clear that the prosecutor intended to, and in fact did, obtain a conviction.  The discovery of the Jack McMahon tapes does not make Diggs's claim meritorious.  The McMahon tapes provided information on techniques that supposedly increased chances of obtaining a conviction.  Thus, their discovery does not provide evidence that the prosecutor in Diggs's third trial intentionally sought to cause a mistrial.

F.     Ineffectiveness of Appellate Counsel for Failing to Assert Trial Counsel's Ineffectiveness for Failing to Introduce Petitioner's Alibi Defense

Diggs claims that his appellate counsel was ineffective for failing to assert on direct appeal

trial counsel's ineffectiveness regarding Diggs's alibi.  Diggs asserts that he was in Harrisburg, Pennsylvania, at the time the victim was murdered in Philadelphia.  Diggs asserts that he told trial counsel of his alibi and gave trial counsel the names and last known addresses of witnesses who could have verified his alibi.

> In addressing this claim on the PCRA appeal, the Superior Court found:

> Defense counsel testified that [Petitioner] told him that he was in Harrisburg, Pennsylvania, and that various witnesses would verify this fact. N.T. 2/28/94 at 20-21. However, defense counsel further testified that he was unable to locate any of the witnesses and could not find anyone who would verify that [Petitioner] was in Harrisburg, Pennsylvania when Ms. DeBose was murdered. N.T. 2/28/94 at 21. Defense counsel indicated that he was concerned that if he specifically asked [Petitioner] where he was when Ms. DeBose was murdered the Commonwealth would ask [Petitioner] on cross-examination who he was with and why the witnesses were not testifying. N.T. 2/28/94 at 22.  During trial defense counsel specifically asked [Petitioner] if he killed Ms. DeBose, to which [Petitioner] replied negatively, and defense counsel elicited testimony from [Petitioner] that [he] called his wife from Harrisburg, Pennsylvania, the morning after the murder N.T. 10/23/91 at 340-341.
>
> Based on the aforementioned, we conclude defense counsel had a reasonable, strategic basis for not specifically asking [Petitioner] if he was in Harrisburg, Pennsylvania, when Ms. DeBose was murdered, and, therefore, [Petitioner's] layered ineffective assistance of counsel claim fails.

PCRA Appeal Opinion at 16.

The Magistrate Judge found that the state court's reasoning regarding this claim for ineffectiveness was not contrary to nor an unreasonable application of Strickland. The Magistrate Judge concluded that the decision of trial counsel not to ask Diggs about his alibi was clearly a matter of trial strategy, especially due to the fact that counsel had been unsuccessful in locating the allegedly corroborating witnesses, and that questioning Diggs on his alibi would subject him to damaging cross-examination about why there were no corroborating witnesses.  As trial counsel performance cannot be considered deficient for failing to introduce Diggs's alibi defense, appellate

counsel cannot be faulted for failing to raise this issue on appeal.

In his objections, Diggs reasserts that trial counsel was ineffective for failing to ask him about his alibi. Diggs also now contends in his objections that trial counsel never did anything other than mail a letter to the address of the alibi witness, and that "trial counsel never made any efforts to ascertain possible testimony and bringing (sic) these witnesses to court." (*Pro se* Objections at 13). We overrule his objections.

The state court's adjudication of Diggs's claim that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to question him about his alibi defense was not contrary to nor an unreasonable application of Supreme Court precedent.  The trial attorney's decision not to ask Diggs to testify about his alibi was clearly a matter of trial strategy given that counsel had been unsuccessful in locating any alleged alibi witnesses, and questioning Diggs on his alibi would have caused him to be subjected to damaging cross-examination regarding why no alibi witnesses had testified on his behalf.  Diggs's claim that trial counsel made insufficient efforts to locate his alleged alibi witnesses has not been presented previously to the state courts.  Consequently, an ineffectiveness claim on this basis is unexhausted and procedurally defaulted, with no basis in the record to excuse said default.

G.   Trial Court Error in Failing to Provide Petitioner with Voir Dire Transcripts

Diggs asserts that the trial court violated his constitutional rights by failing to provide him with transcripts from the voir dire.  Diggs raised this claim in his PCRA appeal, and the Superior Court found this claim to be waived because he could have raised it on direct appeal but failed to do so.  Diggs asserts that he did file a motion to have the voir dire testimony transcribed and that the court ignored his request, but he makes no citation to the record of such a request.  In order to

overcome the procedural default of this claim of trial court error, Diggs must demonstrate cause and prejudice or show that the failure to review this claim would be fundamentally unfair.

To establish cause, Diggs asserts that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in failing to obtain the voir dire transcripts.  The Superior Court addressed the validity of this claim and found it to be meritless.  It noted that Diggs asserted that "[i]f appellate counsel had read the docket entries and reviewed [the] pro se pet[i]tion's (sic) that were filed with the clerk in [the] lower court, he would have seen the probability that there might just be something to appellant's motions and allegations.  He missed the mark."  PCRA Appeal Opinion (quoting Appellant' Brief at 56).  The Superior Court found that this bald assertion that appellate counsel was ineffective was insufficient to overcome the presumption that counsel is competent.  The Superior Court also noted that Diggs did not develop any specific argument concerning trial counsel's effectiveness.  Id. at 17 n.18.

In his habeas brief, Diggs asserts that the Superior Court's conclusion that his allegations of appellate counsel ineffectiveness were insufficient was "just plain error" because counsel was clearly ineffective given that petitioner had raised a Batson challenge, the District Attorney's Office may have had a policy of striking African Americans at the time of Diggs's trial, and petitioner had just been retried after a Batson violation in a prior trial.  The Magistrate Judge recommends finding that the claim of trial counsel ineffectiveness claim has no merit, and thus cannot serve to excuse his procedural default of the underlying claim of trial court error.  Alternatively, the Magistrate Judge recommends finding that the underlying claim of trial court error is meritless.  In his Objections, Diggs repeats the arguments contained in his habeas petition.

We find that the Superior Court's denial of the claim of ineffectiveness of appellate counsel

was not contrary to nor an unreasonable application of established Supreme Court precedent and thus we overrule Diggs's objections.  Under <u>Strickland</u>, a court must be "highly deferential" to counsel's decisions and there is a "strong presumption" that counsel's performance was reasonable. <u>Strickland</u>, 466 U.S. at 689.  Diggs's only basis for ineffective assistance of counsel is his assertion that, if appellate counsel had read the docket and his *pro se* petitions, he would have seen that there was a possible <u>Batson</u> violation.  Without more, it is not an unreasonable application of Supreme Court precedent for the state court to have found that Diggs failed to overcome the strong presumption that counsel was competent.  Moreover, it is more reasonable to conclude that appellate counsel choose to spend his efforts on non-<u>Batson</u> claims given that trial counsel – who, as we discuss *infra*, was intimately familiar with <u>Batson</u> due to the fact that he successfully obtained a new trial for Diggs on the basis of a <u>Batson</u> violation – clearly did not believe there was a viable <u>Batson</u> claim in the second full trial.  As his claim for ineffective assistance of appellate counsel is without merit, it cannot excuse his procedural default of the underlying claim of trial court error.

H.   <u>Prosecutorial Misconduct in Improperly Excluding Black Venirepersons in Violation of *Batson*</u>

In a related claim, Diggs alleges prosecutorial misconduct in improperly excluding young black venirepersons in violation of <u>Batson</u>.  The Superior Court, on PCRA appeal, addressed this claim and found it to be waived because Diggs could have raised it at trial – when the African-American members of the venire were peremptorily struck – as well as on direct appeal, but did not. The Superior Court, nevertheless, addressed the merits of the claim because Diggs also included a layered ineffectiveness of counsel claim for failing to raise or preserve this issue, finding that the <u>Batson</u> claim had no merit because Diggs was not able to show with the evidence he proffered at the

-30-

post-conviction stage, any actual, purposeful discrimination by the prosecutor.[5]

The Magistrate Judge found that the underlying substantive Batson violation was procedurally defaulted because it was not raised during the voir dire or on direct appeal, a fact the Magistrate Judge found particularly revealing since trial counsel was the same attorney that successfully argued the Batson violation leading to the granting of the new trial. In his counseled Objections, Diggs objects to the procedural default recommendation, citing Brinson v. Vaughn, 398 F.3d 225 (3d Cir. 2005).[6] (Counseled Objections at unnumbered page 20-21.) We overrule this objection. The holding of Brinson is inapposite to the issue of procedural default. See id. at 227 n.2 (noting that the state courts did not hold, and the Commonwealth did not contend on appeal, that Brinson procedurally defaulted his Batson claim by failing to raise an objection at the time when the challenges were exercised). We also find that the default cannot be excused because, under

_____

[5]Notably, the Superior Court did not apply the three-step process described in Batson, but rather relied on Commonwealth v. Uderra, 862 A.2d 74 (Pa. 2004) which relied on McCrory v. Henderson, 82 F.3d 1243 (2d Cir. 1996) (holding that, on collateral review, the three-step Batson process is not to be utilized; it is only appropriate to adjudicate contemporaneous objections during the voir dire, where the prosecutor can state his non-discriminatory reasons before the jury is empaneled). Uderra held that a post-conviction petitioner may not rely on a prima facie case under Batson, but must prove actual, purposeful discrimination by a preponderance of the evidence in addition to all other requirements essential to overcome the waiver of an underlying Batson claim. Uderra, 862 A.2d at 87. Diggs contends in his habeas brief that the Superior Court's reasoning used to find that the underlying Batson claim had no merit and, consequently, to deny his ineffective assistance of appellate counsel claim, was contrary to and/or an unreasonable application of Supreme Court precedent because the Superior Court required Diggs to meet a threshold higher than the prima facie standard established in Batson. The United States Court of Appeal for the Third Circuit has never spoken on the holding of McCrory, and continues to consider non-contemporaneously raised Batson violations under the three-step process. See, e.g., Hardcastle v. Horn, 368 F.3d 246 (3d Cir. 2004). Because we agree with the Magistrate Judge that the issue was procedurally defaulted, we do not reach the issue of whether the Superior Court's citation to McCrory, as authority that the three-step Batson process is not to be utilized on collateral review, was contrary to or an unreasonable application of Supreme Court law.

[6]In his *pro se* Objections, Diggs does not address the procedural default issue.

Strickland, counsel's failure to object was entitled to a presumption of validity, and Diggs's unsupported assertion that counsel should have objected is insufficient to overcome the presumption.

I.    Violation of Due Process for Excluding Evidence of the Acquittal of Petitioner's Accomplice, and Layered Ineffectiveness of Counsel for Failing to Raise and Preserve This Claim

Diggs asserts that his due process rights were violated when the trial court excluded evidence of the acquittal of Petitioner's accomplice, Alfred Clark; that trial counsel was ineffective for failing to object in this regard; and that appellate counsel was ineffective for failing to preserve this claim on appeal. Specifically, Diggs asserts that the prosecutor was permitted to convey to the jury that Alfred Clark participated in the crime for which Diggs was on trial, even though the prosecution knew that Clark has been acquitted, and that Diggs was not able to correct the misrepresentation by the prosecutor by presenting evidence of Clark's acquittal. Diggs asserts that his request to introduce the evidence of Clark's acquittal was made "solely in response to the prosecutor's repeated and continued deception inferring to the jury that Clark was one of the perpetrator's in [Linda] DeBose's death." (Pet.'s Br. at 104.) Diggs contends that the prosecutor insistently argued Clark's guilt to the jury as a vital and indispensable part of his theory of the case, knowing this assertion to be false.

The Superior Court addressed the issue of trial court error in excluding evidence of Clark's acquittal. The Superior Court found that this issue was waived because it could have been raised on direct appeal but Diggs failed to do so. Because Diggs raised a layered ineffective assistance of counsel claim, the Superior Court proceeded to address the claim on the merits and found that there was no trial error under Pennsylvania evidence law. The Superior Court did not address a due process claim. The Magistrate recommends finding that: 1) the due process claim is procedurally

-32-

defaulted by operation of the independent and adequate state ground doctrine; and 2) the ineffective assistance claim is without merit and thus cannot serve as cause to excuse the default.   In his Objections, Diggs repeats the allegations contained in his petition.

We overrule Diggs's objections.   The Superior Court's determination that the underlying claim of trial court error was without merit vitiates Diggs's claim of ineffective assistance as a basis for excusing his procedural default.   Diggs's has no basis to show ineffective assistance of counsel given the clear Pennsylvania rule of evidence precluding the type of evidence to which counsel failed to object.   See Commonwealth v. Holloway, 739 A.2d 1039, 1044 (Pa. 1999) (holding that no evidence of another's acquittal may be introduced to create an impression before the jury that the defendant is equally innocent).   Diggs's counsel could not have been ineffective for not attempting to have this evidence admitted or for failing to raise an objection.   Because, under Strickland, counsel cannot be ineffective for failing to raise a meritless claim, Diggs is not entitled to relief based on his layered claim of ineffective assistance of counsel for failing to raise trial court error.[7]

_____

[7]Assuming arguendo that Diggs did fairly present his federal due process claim to the state court and the state court did not adjudicate this claim on the merits, we find that this claim is without merit.   The Supreme Court has been traditionally reluctant to "impose constitutional constraints on ordinary evidentiary rulings by state trial courts."   Crane v. Kentucky., 476 U.S. 683, 689 (1986). The Constitution gives trial judges "wide latitude" to exclude evidence that is "repetitive," "only marginally relevant," or that poses an undue risk of "harassment, prejudice, or confusion of the issues."   See Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).   Further, the Court has "never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability – even if the defendant would prefer to see the evidence admitted."   Crane, 476 U.S. at 690 (citing Chambers v. Mississippi, 410 U.S. 284, 302 (1973).   Nonetheless, the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense."   Crane, 476 U.S. at 690 (citations omitted).   This right is abridged by evidence rules that "infring[e] upon a weighty interest of the accused" and are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'"   United States v. Scheffer, 523 U.S. 303, 308 (1998) (quoting Rock v. Arkansas, 483 U.S. 44, 58 (1987)).
In the instant situation, the evidentiary rule applied by the state court precludes a criminal defendant from presenting evidence of the acquittal of another person charged in connection with

J.      Violation of Due Process for Having to Wear Prison Clothes at Trial

Diggs asserts in his habeas petition that his due process rights were violated at trial because he was forced to stand trial wearing prison clothes.  He also asserts a layered claim of ineffective assistance of counsel for failing to preserve this claim.  The Superior Court found the substantive claim was waived because Diggs failed to raise it on direct appeal.  The Superior Court then addressed the layered ineffective assistance of counsel claim and determined that Diggs was not entitled to relief because he failed to offer proof that the jury was aware that he was clothed, in part, in prison attire, and failed to establish that the clothing was marked or identified as prison attire.

The Magistrate Judge recommends finding that the underlying claim of trial court error is procedurally defaulted by operation of the independent and adequate state ground doctrine.  The Magistrate Judge also recommends that the claim of ineffective assistance of counsel is without

the same episode to create the impression before the jury that the defendant is equally innocent.  See Commonwealth v. Meredith, 425 A.2d 334 (Pa. 1981) (stating that the admission of evidence of the fact that another jury concluded that another defendant had not committed the crime would not aid in the slightest the determination of the instant defendant's innocence or guilt.)  The one exception to this rule is that a defendant may introduce evidence of another person's acquittal when that person testifies on behalf of the defendant and the acquittal is introduced for the limited purpose of removing the cloud of criminal charges over the witness.  Commonwealth v. Holloway, 739 A.2d 1039, 1044 (Pa. 1999).  Here, the exception is inapplicable because a person acquitted did not testify on Diggs's behalf.

Under the Pennsylvania Rules of Evidence, a prosecutor would not be permitted to present evidence of a co-conspirator's conviction or guilty plea for the purpose of proving that the defendant was guilty.  See Pennsylvania Rules of Evidence 404(b)(1).  The fact that evidence of a co-conspirator's conviction would not be admissible to show that the defendant is also guilty, demonstrates that the evidentiary rule precluding evidence of a co-conspirator's acquittal is not arbitrary.  This conclusion is also bolstered by the fact that other courts apply a similar rule regarding the exclusion of evidence of a co-conspirator's acquittal.  See United States v. Sanders, 95 F.3d 449, 454 (6th Cir. 1996); United States v. Fernandez-Roque, 703 F.2d 808, 813 (5th Cir. 1983).  The fact that the prosecution's theory was that Diggs, Clark, and Riggins were co-conspirators and that the prosecutor made reference to this theory does not alter the conclusion that Diggs's due process rights were not violated by the exclusion of evidence of Clark's acquittal.

merit and thus cannot excuse Diggs's procedural default. The Magistrate Judge found that it was highly unlikely that the clothes Diggs was wearing during the first three days of trial were identifiable as prison-issue based on the fact that: 1) Judge Stout, responding to Diggs's complaint about his clothes during the trial, stated that she could not tell that Diggs's clothes were prison-issue garb; and 2) there was no evidence in the record to establish that any juror thought otherwise. In his counseled Objections, Diggs asserts there is "no doubt" that his clothing was identifiable as prison garb. (Counseled Objections at unnumbered page 24.) We overrule the objection.

Whether the jury could tell that Diggs was wearing prison-issue clothing is a question of fact entitled to a presumption of correctness. Werts, 228 F.3d at 196. The trial judge, the person who was in the best position to evaluate Diggs's appearance, could not tell that he was wearing prison clothing. Counsel's unsupported assertion that there was "no doubt" that Diggs's clothing could be identified as prison garb does not rebut the presumption by clear and convincing evidence.

K.      Trial Court Error in Sentencing and Layered Ineffectiveness of Counsel for Failing to Raise and Preserve this Claim

Diggs asserts in his habeas petition that the trial court erred in increasing the sentence after his re-trial, and that trial and appellate counsel were ineffective in failing to raise this claim. After Diggs's first conviction, he was sentence to life-imprisonment *concurrent* with another homicide conviction for which he was already serving a life sentence. After Diggs's successful appeal and following his re-trial, Diggs was sentenced by a different trial judge to life imprisonment to run *consecutive* to the life sentence he was already serving. Diggs asserts that trial counsel was ineffective for failing to object to the harsher sentence imposed by the new trial judge following his successful appeal and retrial, and that appellate counsel was ineffective for failing to preserve this

-35-

claim.  Furthermore, Diggs asserts that the only reason on which the new trial judge could have relied in order to justify increasing his sentence, was the fact that Diggs was arrested for a double murder.  Diggs, however, was subsequently acquitted of charges associated with this double murder. Diggs asserts that the charges of the double murder should not have played a role in increasing his punishment.

The Superior Court addressed Diggs's claim of trial and appellate counsel ineffectiveness, and found these claims to be without merit because the underlying claim of sentencing error was meritless.  The Superior Court identified the applicable Supreme Court precedent as North Carolina v. Pearce, 395 U.S. 711 (1969), in which the Court held that a sentencing court violates the Due Process Clause when it imposes a heavier sentence upon a reconvicted defendant for the purpose of penalizing the defendant for having successfully appealed from his original conviction.  See id. at 723-24.  As a prophylactic measure, the Court created a "presumption of vindictiveness which may be overcome only by objective information in the record justifying the increased sentence.  United States v. Goodwin, 457 U.S. 368, 374 (1982).  The Superior Court recognized that Pearce and its progeny teaches that the Due Process Clause of the Fourteenth Amendment prevents an increased sentence when that increase was motivated by vindictiveness on the part of the sentencing judge, but held that "the Pearce requirements . . . do not apply in every case where a convicted defendant receives a higher sentence on retrial.'"  PCRA Appeal Opinion at 22-23 (quoting Commonwealth v. Mikesell, 537 A.2d 1372, 1380 (Pa. Super. 1988) (quoting Texas v. McCullough, 475 U.S. 134, 138 (1986).  The Superior Court, citing Mikesell, held that there was no presumption of vindictiveness when the judge who imposed the original sentence is different from the judge who imposed the new sentence following a successful appeal, and that, in the absence of such a

presumption, the defendant must affirmatively prove actual vindictiveness.  PCRA Appeal Opinion at 23 (quoting Mikesell at 1381); see also McCullough, 475 U.S. at 140 (holding that the Pearce presumption does not arise where "different sentencers assessed the varying sentences that [defendant] received").  Because Diggs had not set forth a case of actual vindictiveness, the Superior Court found that Diggs's claim has no merit.

The Magistrate Judge recommends finding that the reasoning of the state court is neither contrary to nor an unreasonable application of the Supreme Court law in Pearce, because the Pearce presumption was subsequently narrowed by the Court in McCullough.  Because Diggs was resentenced by a different judge, the Magistrate Judge recommends that  the state court finding that there is no presumption of vindictiveness, and its conclusion that this claim is without merit, are not contrary to nor an unreasonable application of Supreme Court precedent.   In his counseled Objections, Diggs reasserts that the Pearce presumption applies.  We overrule this objection on the basis of McCullough.

L.    PCRA Court Error in Failing to Grant an Evidentiary Hearing on Affidavits Submitted by Witnesses Attacking the Credibility of Ricardo Kelsey

Diggs claims in his habeas petition that the PCRA court erred in failing to grant an evidentiary hearing regarding affidavits submitted from fellow inmates.  Diggs asserts that, in these affidavits, fellow inmates affirm that Ricardo Kelsey, a Commonwealth witness, told them that he lied about Diggs's involvement in the murders in response to pressure placed on him by the police.  The Magistrate Judge recommends finding that Diggs's claim of error on the part of the PCRA court is not cognizable in a federal habeas action.  Diggs objects to this recommendation claiming this claim is cognizable in a federal habeas petition, relying on Lambert v. Blackwell, 387 F.3d 210 (3d

Cir. 2004) for the proposition that the Third Circuit will review on the merits a claim in which a petitioner asserts error in PCRA proceedings.

We overrule Diggs's objection.  Diggs's reliance on Lambert is misplaced.  Lambert involved a question about whether the state's conduct during a PCRA hearing could be grounds to grant federal habeas relief.  The Third Circuit did look at the merits of the petitioner's claim and denied relief because the claim was meritless.  However, this was an alternative holding, stated after the Third Circuit noted that the "Commonwealth's conduct at the PCRA hearing is not a basis for habeas relief."  Id. at 260.  Similarly, in this case, Diggs's claim that the PCRA court erred in failing to conduct an evidentiary hearing is not a cognizable claim in a federal habeas petition.  See Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998) ("Thus, the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation.") (emphasis in original).

M.    Prosecutorial Misconduct in Closing Argument

Diggs's last claim is that the prosecutor made several allegedly improper statements during closing argument.[8]  The statements by the prosecutor that Diggs contends were improper include:

1.    Remarking that if the basement floor and walls could talk they would say Diggs was

_____

[8]The Magistrate Judge noted that consideration of this claim was complicated by the fact that Diggs captioned the claim as one of due process arising from prosecutorial misconduct, but argued both trial court error and ineffective assistance of counsel for failing to object to the prosecutor's statements.  Because the state courts reviewed the claim solely in the context of ineffective assistance, the Magistrate Judge addressed the merits on that basis.  We too limit our consideration to the claim actually presented to the state courts.  The Magistrate Judge also noted that Diggs included statements in his habeas petition that he did not previously challenge in the state courts. He recommends that a claim based on any such statement is unexhausted and procedurally defaulted. We adopt that recommendation.

responsible for the victim's death.

2.      Calling Diggs a liar and giving his personal opinion of Diggs's veracity.

3.      Referring to the killing as a "slaughter" and an "annihilation."

4.      Referring to Diggs as a "vampire."

5.      Asking the jury to find Diggs guilty so that the victim's soul could rest in peace.

6.      Remarking that Diggs was a "beast," "inhuman," and "heartless," and equated the killing to "animal abuse" and "war crimes."

The Superior Court reviewed this claim in the context of a claim for ineffective assistance of counsel for failing to object to the prosecutor's comments, and in so doing found that the underlying claim had no merit. The Superior Court stated that "a new trial will only be required when the unavoidable effect of the prosecutor's comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that jurors could not weigh the evidence and render a true verdict. <u>Commonwealth v. Diggs</u>, 3664 PHILA 1994, at 7 (Pa. Super. Aug. 15, 1996) (citing <u>Commonwealth v. Faulkner</u>, 595 A2d 28, 29 (Pa. 1991)). The Magistrate Judge recommends finding that the Superior Court's determination regarding ineffective assistance of counsel is not a contrary to or unreasonable application of the <u>Strickland</u> standard. We adopt the Magistrate Judge's recommendation.

The Superior Court's determination that the underlying claim of prosecutorial misconduct was meritless is also not contrary to or an unreasonable application of Supreme Court precedent. To constitute a due process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." <u>Greer v. Miller</u>, 483 U.S. 756, 756 (1987). The Third Circuit has explained that, under Supreme Court precedent, a "reviewing

court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant."  Here, the Superior Court reviewed each of the alleged instances of misconduct, and found that, after examining them in context, including the extraordinarily brutal nature of the killing, the comments did not create bias or hostility on the part of the jury such that it could not render a true verdict.  While it might be argued that the comments of the prosecutor were inappropriate, it was not unreasonable for the state court to find that they did not render the entire trial fundamentally unfair.

## IV.  CONCLUSION

The *pro se* and counseled Objections filed by Petitioner Diggs are overruled and the Report and Recommendation submitted by Magistrate Judge Scuderi is approved.  No issue raised by Diggs constitutes a substantial showing of the denial of a constitutional right.  Accordingly, we dismiss the petition for writ of habeas corpus and decline to issue a certificate of appealability.  See 28 U.S.C. § 2253(c)(2).

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHARLES KIRK DIGGS        :        CIVIL ACTION
                                       :
      v.                         :
                                       :
DAVID DIGUGLIELMO, et al.        :        NO. 06-24

## ORDER

**AND NOW**, this      day of November, 2007, upon consideration of the Amended Petition for Habeas Corpus Relief (Docket Entry # 13), the Report and Recommendation of Magistrate Judge Scuderi (Docket Entry # 18), Petitioner's *Pro Se* Objections to the Magistrate Judge's Report and Recommendation (Docket No. 19), Petitioner's *Pro Se* "Supplemental Objections Motion for a Evidentiary Hearing Petitioner's Motion for a Copy of the Record Relevant to the Issues Before this Court" (Docket No. 20), Petitioner's Counseled Objections to Magistrate's Report and Recommendation (Docket No. 23), Respondent's  Response (Docket No. 24) and Petitioner's *Pro Se* Reply to the Response (Docket No. 27), **IT IS HEREBY ORDERED** that:

1.     Petitioner's *Pro Se* Objections, *Pro Se* Supplemental Objections and Counseled Objections to the Report and Recommendation are **OVERRULED**.

2.     The Report and Recommendation is **APPROVED AND ADOPTED**.

3.     The Amended Petition for Habeas Corpus Relief is **DISMISSED**.

4.     A certificate of appealability is **DENIED** pursuant to 28 U.S.C. § 2253(c)(2).

5.     The Clerk is directed to mark this matter closed.

                          BY THE COURT:

                          /s/ John R. Padova

                          _____
                          John R. Padova, J.